In re John R. DOHERTY, Esq.

[650 A.2d 522]

No. 94-379

October 7, 1994.

The period of suspension shall begin on November 1, 1994 and end on December 31, 1994.

## Opinion of the Professional Conduct Board

This matter was presented to us by joint stipulation of the parties. The parties also appeared before us at a Rule 8(D) hearing on April 1, 1994, to urge the recommended sanction of public reprimand.

We accept the parties stipulation of facts and conclude that respondent violated DR 1-102(A)(7) (engaging in conduct adversely reflecting upon fitness to practice law) by engaging in the use and cultivation of marijuana.

### FACTS

Respondent, John R. Doherty, became a member of the California bar in 1979. In December of 1990, he joined the Vermont bar. He is presently a member of the firm of Medor, McCamley & Doherty, P.C., in Rutland.

In September of 1992, pursuant to a search warrant, state and local police searched respondent's home and seized marijuana, three marijuana plants and drug paraphernalia. The police found no evidence of the purchase, sale or distribution of marijuana at Mr. Doherty's home. Respondent informed the Board that the marijuana was for his personal use, and we accept that statement as true.

Respondent was charged with a felony, the knowing and unlawful possession of marijuana in an amount consisting of more than two ounces. He pled guilty to one charge of cultivation of marijuana, in violation of 18 V.S.A. § 4230(a)(1), a misdemeanor. Respondent was given a one year deferred sentence with the require-

ments that he participate in substance abuse screening, counselling and treatment as directed by his probation officer and contribute $500 to the Manchester D.A.R.E. program (Drug Abuse Resistance Education).

## CONCLUSIONS

We agree with the stipulation proposed by the parties that an attorney is expected to conform to the legal requirements of the legal system in which he practices. Engaging in the cultivation and use of illegal drugs is a serious violation of the laws of Vermont.

Although respondent possessed a sufficient amount of marijuana to constitute a felony under the laws of this state, he was convicted of a misdemeanor. By engaging in such conduct and being convicted of a criminal offense, respondent violated DR 1-102(A)(7).

We do not agree, however, with the parties proposed mitigating factors. The only mitigating factors which we conclude are present here are an absence of a prior disciplinary record and a cooperative attitude toward the disciplinary proceedings.

We reject the parties' recommendations that three other mitigating factors are also present. First, because respondent received only a deferred sentence, we do not find that there has been the imposition of other penalties of such significance to amount to a mitigating factor. Second, based upon respondent's statements to the Board and his general demeanor, we cannot find that respondent appreciates the seriousness of his conduct or is remorseful for engaging in a serious violation of the criminal laws. Third, the rendering of legal services pro bono is not a mitigating factor under the ABA Standards and will not be considered one here.

In aggravation, we find that respondent has substantial experience in the practice of law.

In recommending an appropriate sanction to the Supreme Court, we are guided by the Court's decision in *In re Berk*, 157 Vt. 524, 602 A.2d 946 (1991), and with our previous experience in that case as well as the companion case of *In re Mayer*, 159 Vt. 621, 617 A.2d 153 (1992) (mem.). In *Berk*, respondent was suspended for six months after his arrest in New Jersey for attempting to purchase between six and seven grams of cocaine. Criminal charges were dismissed after Mr. Berk successfully completed a pretrial diversion program. Prior to his arrest in New Jersey, Mr. Berk had purchased cocaine on at least three other occasions, each time collecting money from friends and sharing the cocaine purchased with them. At the time of the New Jersey arrest, Mr. Berk met with the cocaine supplier, who sought his legal advice on a pending drug charge. Although Mr. Berk declined to represent the supplier, he did discuss his case with him in general terms.

Although certainly serious, we consider the crime here of cultivation of three plants in respondent's own vegetable garden to be materially different from the conduct in *Berk* for a number of reasons: First, respondent here was not, as in *Berk* or *Mayer*, involved with the more dangerous drug of cocaine. In both state and federal courts nationwide, cocaine possession, manufacturing, and/or sale is uniformly treated far more harshly than similar activity involving marijuana. Second, respondent here did not, as in *Berk*, engage in a criminal conspiracy with others who knew him to be a lawyer and who had sought his legal advice. Third, and, most importantly, respondent here was not, as in *Berk*, involved in soliciting others to purchase illegal drugs or in distributing illegal drugs to others.

While we are mindful of the dissenting opinion's concern that the amount of marijuana cultivated classified respondent's acts here as felonious, we are also mindful that the legislative intent in that classification was to punish those in the business of distributing marijuana to others. The

evidence here supports our belief that respondent was using the marijuana for purely personal consumption. The number of plants and the absence of any of the typical indicia of drug trafficking (e.g., scales, lists of suppliers and/or customers, etc.) confirms such a finding.

Other jurisdictions have taken a variety of approaches in this matter. We note that sanctions of public reprimand have been imposed in several cases involving misdemeanor convictions for possession of marijuana. See *In re Roche*, 540 N.E.2d 36 (Ind. 1989); *In re Turner*, 463 N.E.2d 477 (Ind. 1984); *In re Higgins*, 480 N.Y.S.2d 257 (App. Div. 1984); *In re Echevarria*, 574 A.2d 991 (N.J. 1990); see also *In re Anonymous Member of the South Carolina Bar*, 360 S.E.2d 322 (S.C. 1987) (private admonition), and *In re Director*, 442 N.Y.S.2d 553 (App. Div. 1981) (public censure for misdemeanor sale of marijuana). While similar conduct has also resulted in suspension in some jurisdictions, see, e.g., *State ex rel. Oklahoma Bar Ass'n v. Denton*, 598 P.2d 663 (Okla. 1979); *State ex rel. Oklahoma Bar Ass'n v. Thompson*, 781 P.2d 824 (Okla. 1989); and *Florida Bar v. Schram*, 355 So. 2d 788 (Fla. 1978), we find, under the circumstances presented here, that public reprimand reflects a more measured and appropriate response.

Given the results reached in *Mayer* and *Berk*, which involved more serious criminal activity than engaged in here, we feel that it would be appropriate for the Supreme Court to publicly reprimand respondent with the added condition that respondent be placed on probation with the condition that he successfully complete his court-imposed conditions of probation.

## DISSENTING OPINION

While we have great respect for our colleagues views, we feel that precedent as well as public policy require that respondent be suspended from the practice of law for two months.

Section 5.12 of the ABA Standards for Imposing Lawyer Discipline states that, absent aggravating or mitigating factors, "suspension is generally appropriate when a lawyer knowingly engages in criminal conduct . . . [which] seriously adversely reflects on the lawyer's fitness to practice."

We feel that cultivation of felonious amounts of marijuana seriously adversely reflects on respondent's fitness to practice law. We also feel that the two mitigating factors do not remove this misconduct to a lesser sanction, in light of the presence of the one aggravating factor.

We also rely upon *In re Berk*, 157 Vt. 524, 602 A.2d 946 (1991), particularly the discussion of fitness to practice law at pages 530 through 532. There, the Court held that an attorney who, after thirteen years of practice, nevertheless consciously and knowingly decided to break the law, engaged in criminal acts which "reflect negatively on his professional judgment and detract from public confidence in the legal profession." *Id.* at 531, 602 A.2d at 950.

The *Berk* Court cited with approval the Alaska Supreme Court's decision of *In re Preston*, 616 P.2d 1, 5 (1980), which held:

> An attorney acts in a position of public trust and is an officer of the court. He has a duty to the profession and the administration of justice, especially to uphold the laws of the state in which he practices.

The *Berk* Court also relied upon *In re McLaughlin*, 522 A.2d 999, 1002 (N.J. 1987), where judicial law clerks' purchase of drugs for personal use resulted in public reprimand, rather than suspension, only because of the clerks' lack of experience at the bar and because it was the first time the New Jersey court was presented with such misconduct. The *McLaughlin* court held that, henceforth, a lawyer's drug-related activities would ordinarily call for suspension.

The other cases relied upon in *Berk* best characterize our feeling about respondent's conduct here. See *Office of Disciplinary Counsel v. Simon*, 507 A.2d 1215, 1220 (Pa. 1986) (attorney's involvement in drug transaction reflected on his ability to practice law because he "knowingly and intentionally shirked his responsibility as an officer of the court and exemplified disrespect for the laws which govern our society"); *In re Gorman*, 379 N.E.2d 970, 972 (Ind. 1978) (attorney's drug conviction implicated his fitness to practice law because he "has attempted to place himself above the law and superior to societal judgments").

Respondent here cultivated three marijuana plants which were approximately four feet high when they were seized. This means that respondent, who had been a lawyer for at least 13 years, knowingly engaged in this criminal activity over a considerable period of time and without regard to his ethical obligation to obey the law. It is activity which the people of Vermont, through their state legislature, have deemed to be a felony, regardless of the fact that respondent eventually pled guilty to a lesser crime. Under the Code of Professional Responsibility, a felony is a "serious" crime. Definitions (5) (amended 1988).

We cannot conceive how knowing, intentional, and prolonged criminal activity by an experienced lawyer can be considered anything but conduct which seriously adversely reflects upon his fitness to practice law, mandating suspension under the ABA guidelines. Such blatant disregard for the law casts serious doubt upon respondent's commitment to the ethical standards of this profession.

We are disturbed by the majority's reliance upon the decision in *Berk* as a high water mark against which all other criminal acts involving illegal drugs will be compared. The imposition of sanctions in each case, despite the ABA guidelines and our experience in reviewing many, many cases, is unique to that particular case. The kinds of sanctions imposed in previous cases are always helpful to reexamine; they do not, however, dictate what sanction must be imposed here.

It is worth recalling that in *Berk* the appropriate sanction under the ABA guidelines was disbarment. *Id.* at 532, 602 A.2d at 950. This Board rejected that standard as too draconian in light of the absence of evidence of commercial drug trafficking and in light of many mitigating factors that were present in the *Berk* case but which are not present here. The majority here has further diluted the ABA guidelines by construing the *Berk* sanctions as the general rule to be imposed in illegal drug cases.

Finally, we are most disappointed by the majority's recommendation because it reflects a departure from all other reported cases handled by this Board where criminal conduct has been involved. In all other cases, some period of suspension has been imposed, even where the convictions were for misdemeanors. See *In re Massucco*, 159 Vt. 617, 613 A.2d 718 (1992) (four month suspension from the practice of law following a conviction for failure to file income tax returns); *In re Taft*, 159 Vt. 618, 613 A.2d 717 (1992) (four month suspension following conviction for failure to file income tax returns); and *In re Free*, 159 Vt. 625, 616 A.2d 1140 (1992) (six month suspension following conviction for failure to file income tax returns).

In summary, we urge the Supreme Court to reject the majority's recommendation as far too lenient and to impose a

period of suspension of at least two months.