2014 VT 35

**In re PRB DOCKET NO. 2013.153**

[96 A.3d 468]

No. 14-078

¶ 1. April 17, 2014. Upon review of the hearing panel decision in this matter, the Court concludes as follows: The decision presents a well-reasoned discussion and resolution of a problem common in legal practice, particularly for small firms and solo practitioners. Accordingly, the Court orders review of the decision on its own motion, adopts the hearing panel decision in its entirety as a final order of this Court, waives briefing and oral argument, and orders that the decision be published in the Vermont Reports.

STATE OF VERMONT
PROFESSIONAL RESPONSI-
BILITY BOARD

In re PRB File No. 2013.153

Decision No. *167*

The parties have filed a Stipulation of Facts, Proposed Conclusions of Law and a Recommendation for Sanctions. The Respondent has waived certain procedural rights including the right to an evidentiary hearing. The panel accepts the stipulated facts and recommendations and orders that Respondent be admonished by Disciplinary Counsel for failing to regularly reconcile his trust accounts, for failing to maintain a central trust accounting system and for placing unearned fees in his operating account in violation of Rules 1.15(a)(1) and 1.15(c) of the Vermont Rules of Professional Conduct.

**Facts**

In June of 2012, Respondent's trust account was selected for audit as part of the audit program conducted by Disciplinary Counsel. The audit was performed by a Certified Public Accountant (CPA) who checked the accounts for compliance with Rules 1.15 through 1.15B of the Vermont Rules of Professional Conduct for the period October 1, 2009 through July 25, 2012 (the audit period).

The CPA provided a written report to Disciplinary Counsel detailing Respondent's material noncompliance with the Rules of Professional Conduct during the audit period. As a result of the audit, Disciplinary Counsel opened an investigation into Respondent's trust account management during the audit period.

The CPA found that:

1. Trust accounts had not been reconciled to bank state-

ments and client balances since April of 2010, and that a discontinued trust account had not been closed out.

2. Advance payment of legal fees from clients were routinely deposited into the operating account, not into a trust account. In certain types of cases, particularly DUI cases, Respondent charges a set fee for the work required up to trial. Respondent erroneously believed that this fee was earned upon receipt and thus placed the funds in his operating account.

3. Accounts holding title insurance premiums while awaiting additional legal work were not labeled "trust accounts."

4. There was no centralized accounting system or other single source of account identification for the five trust account and two fiduciary accounts that had activity during the audit period.

Respondent has advised Disciplinary Counsel that he has instituted new policies going forward to ensure trust account compliance under the Rules of Professional Conduct. An inactive trust account has been closed. The client trust account is now reconciled within five days of receiving a bank statement and the reconciliation is approved by Respondent. Lump sum fees are now placed in the trust account upon receipt and withdrawn as earned. The account holding the title insurance premiums is now labeled as the firm's title insurance trust. There is now one centralized system for the client trust account, the title insurance trust account and the fiduciary accounts.

Respondent's clients' funds were never improperly used or in jeopardy and there is no evidence that any client or third party was injured as a result of these violations.

During the course of the investigation, Respondent became aware of the need to place his lump sum fees into the trust account and then to withdraw the appropriate amounts as they were earned. Respondent negligently believed that the funds were earned on receipt.

Respondent is licensed to practice law in Vermont, having been admitted to the bar in Vermont in 1974.

There are two aggravating factors present. Respondent has substantial experience in the practice of law and several prior disciplinary offenses. In 1987, Respondent was publically reprimanded for charging an excessive fee. In 1994, he was admonished for neglecting a client matter and failure to communicate with his client and in 2003 he was admonished for failure to act with diligence, failure to keep his clients informed about the status of their cases and failure to communicate clearly about his fees.

The following mitigating factors are present: Respondent had no dishonest or selfish motive; he has made a timely and good faith effort to rectify the consequences of his misconduct; he has cooperated with Disciplinary Counsel; and the prior offenses are remote in time and dissimilar from the present charges.

## Conclusions of Law

We accept the parties' stipulation as to conclusions of law and find that Respondent violated the following rules.

Rule 1.15(a)(1) of the Vermont Rules of Professional Conduct, which provides that:

> A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation

separate from the lawyer's own property. Funds shall be kept in accordance with Rules 1.15A and B. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation.

Rule 1.15(c) of the Vermont Rules of Professional Conduct, which provides that:

A lawyer shall deposit legal fees and expenses that have been paid in advance into an account in which funds are held that are in the lawyer's possession as a result of a representation in a lawyer-client relationship. Such funds are to be withdrawn by the lawyer only as fees are earned or expenses incurred.

Respondent violated these rules when he placed advance payment of legal fees from clients into his operating account rather than his trust account. The fact that he erroneously believed that the fees were earned upon receipt does not excuse the violation.

Rule 1.15A(a) of the Vermont Rules of Professional Conduct provides that:

(a) Every lawyer or law firm holding funds of clients or third persons in connection with a representation as defined in Rule 1.15(a)(2) shall hold such funds in one or more accounts in a financial institution. An account in which funds are held that are in the lawyer's possession as a result of a representation in a lawyer-client relationship shall be clearly identified as a "trust" account. An account in which funds are held that are in the lawyer's

possession as a result of a fiduciary relationship that arises in the course of a lawyer-client relationship or as a result of a court appointment shall be clearly identified as a "fiduciary" account. The lawyer shall take all steps necessary to inform the financial institution of the purpose and identity of all accounts maintained as required in this rule. The lawyer or law firm shall maintain an accounting system for all such accounts that shall include, at a minimum, the following features:

(1) a system showing all receipts and disbursements from the account or accounts with appropriate entries identifying the source of the receipts and the nature of the disbursements;

(2) a record for each client or person for whom property is held, which shall show all receipts and disbursements and carry a running account balance;

(3) records documenting timely notice to each client or person of all receipts and disbursements from the account or accounts; and

(4) single source for identification of all accounts maintained as required in this rule.

Respondent violated this rule by his failure to reconcile his trust accounts to bank and client balances, his failure to maintain a centralized accounting system for his trust and fiduciary account, his failure to close out a discontinued trust account and his failure to label as a trust account the account holding title insurance premiums while awaiting additional legal work.

### Sanction

The Hearing Panel accepts the parties' recommendation for admonition by Disci-

plinary Counsel. This sanction is consistent with both the ABA Standards for Imposing Lawyer Discipline (ABA Standards) and previous Vermont cases.

The Supreme Court has consistently held that it is appropriate to refer to the ABA Standards for Imposing Lawyer Discipline when determining the appropriate sanction in a disciplinary case. *In re Andres*, 2004 VT 71, ¶ 14, 177 Vt. 511, 857 A.2d 803 (mem.). The ABA Standards require us to first weigh the duty violated, the attorney's mental state and the actual or potential injury caused by the misconduct to arrive at a presumptive sanction, and to then look to the presence of aggravating or mitigating factors to determine whether that sanction should be increased or decreased.

Respondent had a duty to his clients to preserve their property. ABA Standards § 4.1. Respondent violated that duty by failing to reconcile his trust accounts on a regular basis, by failing to maintain a centralized accounting system for his trust accounts and by failing to label an account holding client funds as a trust account. He also violated this duty by placing advance payment flat fees into his operating account rather than his trust account.

Respondent's mental state was one of negligence. He did not intentionally or knowingly violate the trust account rules.

There was no actual injury to any client in this case. Client funds were never improperly used or in jeopardy, and there is no evidence that any client or third party was injured as a result of these violations. The flat fees that were deposited into Respondent's operating account were all eventually earned in the course of the representation.

The facts in this case fit squarely within § 4.14 of the ABA Standards which provides that "[a]dmonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client."

There are both aggravating and mitigating factors in this case.

In mitigation, Respondent had no dishonest or selfish motive, ABA Standards § 9.32(b), he immediately took steps to revise his trust accounting system to comply with the rules, ABA Standards § 9.32(d), and he has cooperated with the disciplinary proceedings, ABA Standards § 9.32(e).

In aggravation, Respondent has substantial experience in the practice of law, ABA Standards § 9.22(i), and has three prior disciplinary offenses, ABA Standards § 9.22(a). In 1987, Respondent was publically reprimanded for charging an unreasonable fee. In 1994, he was admonished for neglect of a client matter and failure to communicate with his client. In 2003, he was again admonished for lack of diligence in his representation of a client and failure to keep his client informed and to communicate clearly about his fees. These cases are both remote in time to the present case and the violations are unrelated to the present charges, and we do not give them much weight as aggravating factors, nor are the other aggravating factors sufficient to increase the sanction beyond admonition.

The latest Supreme Court decision dealing with trust account violations is *In re Farrar*, 2008 VT 31, 183 Vt. 592, 949 A.2d 438 (mem.). For a substantial period of time, Farrar routinely placed his personal funds into his trust account as a way of saving for payroll taxes. The hearing panel imposed admonition. The Supreme Court took the case on its own motion and increased the sanction to reprimand, finding that "[c]ommingling personal property with client property is a serious offense because of the likely negative consequences that may result to an attorney's clients." *Id.* ¶ 7. The *Farrar* Court also stated that "we will not minimize his infraction merely because he was

unaware that his acts violated the rules of professional conduct." *Id.* ¶ 10. Similarly, here we do not excuse Respondent's conduct because he was unaware of the rules; we merely take it into account in determining his mental state at the time of the offense.

In *In re PRB Decision No. 138* (2011), the panel summed up several trust account cases following *Farrar*:

> All resulted in private admonition, and all involved negligence in handling trust accounts with no actual and little potential for harm to clients.

> *In re PRB Decision No. 93* (2006), arose out of a real estate transaction involving a refinancing. There was a three-day right of rescission, and at the expiration of the three days the attorney made disbursement of the funds without checking with her bank to determine if the funds had been wired. They had not been due to a bank error. The error was corrected and no injury resulted.

> *In re PRB Decision No. 105* (2008) is another real estate closing case. The attorney prepared the HUD closing statement and a list of funds needed to be collected from various sources. The realtor's deposit was on the list and checked off, but the attorney failed to get the check from the realtor, and as a result there were insufficient funds of that client to cover the checks written. The error was discovered, funds deposited and no client lost money.

> The attorney in *In re PRB Decision No. 129* (2010) maintained several trust accounts for real estate closings at the behest of the banks for which he

worked. There were two separate complaints here, and in each case the closing funds were deposited in one trust account and the checks for disbursement at the closing were drawn from another trust account. As a result, in both cases the trust accounts were overdrawn and Disciplinary Counsel received the notice of overdraft. No client was harmed and the attorney made changes to his trust accounting practices.

Since this decision there have been several Vermont cases dealing with trust account violations. Like the present case, the decision in *In re PRB Decision No. 163* (2013) arose out of an audit by Disciplinary Counsel. Like Respondent here, the attorney was negligent in his managing of his trust account, in this case by failing to ensure that accounts had a zero balance before closing the file. Also like Respondent, he had a misunderstanding of the law. He had the mistaken belief that he had to maintain at least $1000 in his trust account to cover fees. There was no injury in this case and the attorney was admonished.

In *In re PRB Decision No. 147* (2013), the attorney was admonished for writing checks on his trust account after being assured that the funds had been wired but without checking with his own bank to confirm receipt.

The stipulation of the parties for admonition in this matter is consistent with these cases as well as the ABA Standards.

### Order

Respondent is hereby admonished by Disciplinary Counsel for violation of Rules 1.15(a)(1) and 1.15(c) of the Vermont Rules of Professional Conduct.