NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 63

No. 22-AP-001

In re Melvin Fink, Esq.                                    Original Jurisdiction

                                                           Professional Responsibility Board

                                                           September Term, 2022

Hearing Panel No. 3
Gary F. Karnedy, Chair
Ashley W. Taylor, Esq., Member
Peter Zuk, Public Member

David C. Sleigh of Sleigh Law, St. Johnsbury, for Appellant.

Sarah Katz, Disciplinary Counsel, and Benjamin D. Battles of Pollock Cohen LLP, Special
  Disciplinary Counsel, Burlington, for Appellee.

PRESENT:  Reiber, C.J.,* Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.   **COHEN, J.**   Respondent appeals from the Professional Responsibility Board hearing panel's determination that he violated Vermont Rule of Professional Conduct 4.2, and from its imposition of a thirty-day suspension. We agree with the hearing panel and suspend respondent for thirty days from the practice of law.

I. Facts and Procedural History

¶ 2.   The panel made the following factual findings, which are uncontested on appeal. Respondent is an attorney and solo practitioner in Vermont who has been practicing law for

---

* Chief Justice Reiber was present for oral argument but did not participate in this decision.

approximately fifty years. Relevant to this matter, he began representing wife in 2019 in connection with her separation from husband.

¶ 3.    In May 2020, respondent sent husband two written communications regarding a settlement proposal. These communications each included a statement indicating that husband should deliver the information to his attorney if he were to hire one. That same month, husband hired a local lawyer, who emailed respondent on June 1 stating that she was representing husband in the divorce matter and asking that all future correspondence to husband be sent through her. The respective attorneys engaged in continued communication and negotiations, and respondent ultimately filed a divorce complaint on wife's behalf on June 26. Service of the complaint was not completed on husband until July 20, and husband filed a notice of appearance on July 29.

¶ 4.    Husband's notice of appearance used a form from the family division, which included the following language: "I intend to represent myself and hereby enter my appearance with the [c]ourt. No attorney will represent me in this case unless an attorney or I notify the [c]ourt otherwise." Husband's lawyer notarized the filing and did not enter an appearance on his behalf; however, husband's lawyer continued to provide him with legal advice, and husband authorized her to continue representing him in negotiations with respondent. The family division received husband's notice of appearance on August 3.

¶ 5.    In the interim, on July 31, respondent communicated with husband's lawyer on two issues related to the divorce, and husband's lawyer responded by email indicating husband's stance on the two issues. Respondent did not reply to husband's lawyer's July 31 email, and there were no further communications between the attorneys until August 17. The parties did not discuss husband's representation in this timeframe. Husband's lawyer did not indicate whether she would continue to represent husband notwithstanding the self-represented notice of appearance, and respondent did not ask her.

¶ 6.  On August 17, respondent called husband on the telephone and left a voice message; husband called respondent back later that day and spoke with respondent for about six minutes.  Respondent asked husband to "sit down and talk" in respondent's office to reach an agreement regarding the divorce.  Husband stated, "let me get a hold of my lawyer," to which respondent replied, "technically she doesn't have to be here" and "I see you filed a pro se appearance."  Husband and respondent agreed on a date and time for the meeting but did not discuss any substantive issues related to the divorce during the telephone call.

¶ 7.  Husband felt uncomfortable with respondent's assertion that husband's lawyer would not need to be present for the meeting, and he promptly called his lawyer to inform her of the call.  Husband's lawyer emailed respondent that same day proposing a settlement conference with both parties and their respective counsel present and objecting to respondent speaking with her client without her permission.  Respondent replied to husband's lawyer by email on August 21, writing, "Don't pontificate to me.  [Husband] filed a pro se appearance.  He represents himself, period."  Respondent did not explicitly agree to not contact husband directly again.  On August 24, husband's lawyer replied, stating:

> Your email implies that you are still not accepting that [husband] is represented.  He is, period.  You are not to have any more direct contact with him, period.  You are fully aware that I am representing [husband].  We have been exchang[ing] settlement proposals and other communications, even after the divorce action was filed.  You are fully aware that I do not have to enter an appearance in court to be representing [husband].

Responded did not reply to this email and made no further attempts to contact husband directly.  Husband's lawyer filed a notice of appearance on husband's behalf in the divorce proceeding on October 6.

¶ 8.  The Professional Responsibility Program received a complaint about the above-described interactions, and Disciplinary Counsel formally charged respondent with violating Vermont Rules of Professional Conduct 4.2 and 8.4(a) in January 2021, alleging that respondent,

3

"who represented wife in a divorce matter, communicated or attempted to communicate about the subject of the representation with husband, a person he knew was represented by another attorney, without the consent of the other attorney or authorization by law or a court order." In his written answer to the complaint and subsequent hearing memo, respondent admitted to most of the asserted facts, including the conversation with husband on August 17 and the content of the conversation as described above, but denied having the requisite knowledge of husband's representation and argued that he did not discuss any substantive matters during the call. The hearing panel held a merits hearing in September 2021, during which both respondent and Disciplinary Counsel presented evidence.

¶ 9. The hearing panel determined that respondent violated Rule 4.2, which reads in relevant part, "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law." The panel subsequently imposed a thirty-day suspension. The rule's state-of-mind requirement necessitates "actual knowledge" of representation by another attorney, and the hearing panel acknowledged that it could not find "by the exacting clear and convincing evidence standard that respondent had actual knowledge of the representation at the outset of the phone call." However, the panel noted that husband later told respondent during the call that husband wanted to "get a hold" of his lawyer, thus providing respondent with actual knowledge of the representation. As a result, the panel determined that respondent violated Rule 4.2 during the call by failing to immediately end the call upon being informed that husband was still represented in the matter and instead telling husband that his lawyer did not need to be present at the meeting.

¶ 10. The panel noted that Rule 4.2 does not distinguish between substantive and nonsubstantive discussions and instead prohibits "communicat[ing] about the subject of the representation," including, as relevant here, the suggestion that a party can meet to discuss the

4

matter without the party's lawyer. It therefore rejected respondent's attempts to minimize the violation through his assertion there was no harm both because Rule 4.2 does not contain a "no harm" exception and because the severity of harm is relevant to the sanctions analysis rather than the analysis of whether a violation occurred.

¶ 11. In determining the appropriate sanction, the hearing panel considered the American Bar Association (ABA) Standards for Imposing Lawyer Discipline, including the duty violated, respondent's mental state, the injury and potential injury to husband, and any aggravating and mitigating factors. It concluded that a suspension was warranted and that thirty days would be appropriate "to ensure that respondent pays greater attention to the ethical rules going forward."

¶ 12. On appeal, respondent challenges the hearing panel's violation determination and its imposition of a thirty-day suspension; he does not challenge the panel's findings of fact recited above. He argues that the panel's conclusions were not supported by adequate evidence and makes the following assertions: (1) he did not substantively discuss the divorce with husband on the call; (2) he continued talking to husband on the call because immediately hanging up would have been rude and an unnatural way to end the conversation; and (3) nothing he said could be construed as an attempt to coerce husband to forego future legal representation. Respondent further and alternatively argues that even if there was a de minimis violation, the thirty-day suspension was a disproportionate sanction. He notes that the purpose of a sanction is to protect the public from harm, deter future misconduct, and maintain confidence in the legal system, not to punish attorneys, and asserts that a private admonition would adequately serve these goals.

¶ 13. Disciplinary Counsel argues that respondent violated Rule 4.2 at the outset of the call as well as during the call. Disciplinary Counsel further asserts that suspension is the appropriate sanction and that this Court may increase the length of suspension due to the aggravating factors and the scope of the injury and potential injury.

## II. Analysis

### A. Standard of Review

¶ 14.    Respondent does not challenge the panel's factual findings.  This Court reviews the hearing panel's legal conclusions de novo.  In re Wysolmerski, 2020 VT 54, ¶ 22, 212 Vt. 394, 237 A.3d 706.  The panel's legal conclusions include its violation determination and its sanction.  In re Robinson, 2019 VT 8, ¶ 27, 209 Vt. 557, 209 A.3d 570 (per curiam).  While we do not give deference to the panel's sanction recommendation "as that term is used in our broader caselaw," we "giv[e] consideration to the panel['s recommendations] in light of this Court's role as plenary authority."  Id. ¶ 25.

### B. Rule 4.2 Violations

¶ 15.    Rule 4.2 requires a lawyer to "immediately terminate communication" upon learning that an individual is represented as covered under the rule.  V.R.Pr.C. 4.2 cmt. [3].  The rule applies when "the lawyer has actual knowledge of the fact of the representation, but such actual knowledge may be inferred from the circumstances."  V.R.Pr.C. 4.2 cmt. [8].  The standard of proof for formal charges of misconduct is clear and convincing evidence.  A.O. 9, Rule 20(C).

¶ 16.    We agree with the hearing panel's conclusion that although respondent did not have actual knowledge that husband was represented at the outset of the call, respondent gained such knowledge during the call.  See V.R.Pr.C. 4.2 cmt. [3].  Respondent's blame-shifting assertion that the root of the problem is the concept of "unbundled" representation is unpersuasive.  Regardless of the legitimate ethical and procedural concerns associated with partial representation, the facts of this case do not support a claim of factual or ethical ambiguity.  The notice of appearance, in which husband stated that he would be representing himself, did reasonably suggest that husband was no longer represented by counsel in the divorce matter writ large.  However, husband clarified the issue of representation, and respondent was no longer entitled to rely upon the pro se notice of appearance as soon as husband told him, "let me get a hold of my lawyer."  Respondent was

required to immediately end the call upon this statement, but he instead told husband that his lawyer need not be present for the meeting. This was a violation of Rule 4.2.

¶ 17. Respondent first asserts that he did not violate Rule 4.2 because "nothing of substance related to the divorce was discussed." However, the rule prohibits "communications with any person who is represented by counsel concerning the matter to which the communication relates." V.R.Pr.C. 4.2 cmt. [2]. We agree with the hearing panel that Rule 4.2 does not on its face distinguish between substantive and nonsubstantive content in its prohibition of communicating with a represented party. The conduct at issue here is the communication about the divorce after respondent was told that husband wanted to talk with his lawyer, not respondent's initial placing of the call. Respondent's argument therefore fails.

¶ 18. Next, respondent argues that ending the call after husband's statement "would have been both a rude and an unnatural way to conclude the conversation." We are unpersuaded by this argument. Respondent would have been well within the confines of Rule 4.2 to express surprise at husband's representation status, inform husband that the conversation must end due to respondent's ethical obligations, and indicate that respondent would thereafter communicate through husband's lawyer. Suddenly hanging up the phone without reason might be considered rude and unnatural, but respondent had both a valid reason and the inherent convenience of laying the blame for any perceived slight upon the professional conduct rules. Respondent's stated desire to avoid rudeness simply does not outweigh his ethical obligations.

¶ 19. Also unpersuasive is respondent's final claim that he did not violate Rule 4.2 because nothing he said during the call "could be construed as an attempt to coerce [h]usband to forego representation as the divorce issues moved on." Attempted coercion is not an element of a Rule 4.2 violation. The express purpose of Rule 4.2 is to "contribute[] to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter." V.R.Pr.C. 4.2

7

cmt. [1]. Respondent told husband, "technically [your lawyer] doesn't have to be here" for a meeting after being told that husband wanted to contact his lawyer. Respondent then proceeded to arrange the meeting without said lawyer. Therefore, even if respondent did not act coercively (an issue not addressed by the hearing panel), respondent overreached and violated Rule 4.2 by continuing to communicate with husband about the divorce once he learned husband wished to speak with his lawyer.

## C. Sanction

¶ 20.     "The American Bar Association's Standards for Imposing Lawyer Sanctions guide our sanctions determination." In re Fink, 2011 VT 42, ¶ 35, 189 Vt. 470, 22 A.3d 461; see Ctr. for Pro. Resp., Am. Bar Ass'n, Standards for Imposing Lawyer Sanctions (1986) (amended 1992) [hereinafter ABA Standards]. We impose sanctions "to protect the public and the administration of justice" but not to punish the lawyer. ABA Standards § 1.1.

### 1. Presumptive Sanction

¶ 21.     The ABA Standards ask us to consider: (1) "the duty violated"; (2) "the lawyer's mental state"; (3) "the potential or actual injury caused by the lawyer's misconduct; and" (4) "the existence of aggravating or mitigating factors." ABA Standards § 3.0. We address the first three in conjunction with each other as set out in the ABA Standards' presumptive guidelines, which recommend tiers of sanctions for violations of each duty depending on the lawyer's associated mental state and the resulting injury. See In re Neisner, 2010 VT 102, ¶ 15, 189 Vt. 145, 16 A.3d 587 (analyzing these factors together).

¶ 22.     Here, respondent violated his duty owed to the legal system by engaging in improper communications with an individual in the legal system. ABA Standards §§ 6.0, 6.3. The ABA Standards state that "[s]uspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party." Id. § 6.32.

8

Alternatively, a "[r]eprimand is generally appropriate when a lawyer is negligent in determining whether it is proper to engage in communication with an individual, and causes injury or potential injury to a party," id. § 6.33, and an "[a]dmonition is generally appropriate when a lawyer engages in an isolated instance of negligence in improperly communicating with an individual in the legal system, and causes little or no actual or potential injury to a party," id. § 6.34.

¶ 23. As we concluded above, respondent gained actual knowledge of husband's continued representation during the call and therefore knew that continuing to communicate with husband was improper. Further, respondent's actions caused potential injury. After the call, husband felt uncomfortable with respondent's words—so uncomfortable that he immediately called his lawyer to inform her of the conversation. Had husband not vocalized his feelings of unease to his lawyer, he could have attended the settlement meeting without his attorney present and been without the assistance of counsel. This potential injury is of the exact nature that Rule 4.2 attempts to prevent. See V.R.Pr.C. 4.2 cmt. [1] ("This rule contributes to the proper functioning of the legal system by protecting . . . against possible overreaching by other lawyers who are participating in the matter . . . and the uncounseled disclosure of information relating to the representation.").

¶ 24. While, as noted above, respondent may have been justified in relying upon the self-represented notice of appearance in making the call, he was not justified in continuing the call and continuing to discuss issues related to the divorce after learning that husband was represented. Respondent knew the communication was improper because he gained knowledge during the call that husband was represented, and his actions caused potential injury. We therefore note the presumptive standard of a suspension and turn to the aggravating and mitigating factors to assess whether this sanction should be increased or reduced.

9

## 2. Aggravating and Mitigating Factors

¶ 25. Relevant aggravating factors include: "prior disciplinary offenses," "refusal to acknowledge wrongful nature of conduct," and "substantial experience in the practice of law." ABA Standards § 9.22. Relevant mitigating factors include: "absence of a dishonest or selfish motive," "full and free disclosure to disciplinary board or cooperative attitude toward proceedings," and "remoteness of prior offenses." Id. § 9.32.

¶ 26. In 2011, respondent was publicly reprimanded and placed on probation after this Court concluded that he violated two Vermont Rules of Professional Conduct "for failing to put a contingent fee agreement in writing and for attempting to charge an unreasonable fee." Fink, 2011 VT 42, ¶ 1. The 2011 decision acknowledged "respondent's prior public censure in 1987 for charging an excessive fee" but did not give it much weight due to its temporal remoteness, despite its substantive relevance. Id. ¶¶ 44-45. The fact that respondent has committed two prior disciplinary offenses is concerning, particularly in light of respondent's substantial experience in the law due to his roughly fifty years of practice. See Neisner, 2010 VT 102, ¶ 19 (determining respondent had "substantial experience" as aggravating factor from practicing for around twenty years). However, the prior offenses were unrelated to the conduct at issue here and occurred eleven and thirty-five years ago. We therefore do not consider these prior offenses to be significant aggravating factors. Compare In re PRB Docket No. 2013.153, 2014 VT 35, 196 Vt. 633, 636, 96 A.3d 468, 472 (mem.) ("These [prior offenses] are both remote in time to the present case and the violations are unrelated to the present charges, and we do not give them much weight as aggravating factors . . . ."), with Wysolmerski, 2020 VT 54, ¶ 42 (concluding that gravity and similarity of prior misconduct required that "passage of time d[id] not blunt its significance as an aggravating factor").

¶ 27. More significant is respondent's refusal to acknowledge the wrongful nature of his conduct. In his response to husband's lawyer's email objecting to the phone call, respondent sent

10

a curt email denying wrongdoing, insisting that husband was representing himself, and refusing to agree not to contact husband directly again. He continues to argue on appeal that he did nothing that violated the professional conduct rules in communicating with husband after gaining actual knowledge of husband's representation status, misconstruing the Vermont Rules of Professional Conduct to allow "natural, non-threatening, non-coercive" communications when in fact all communications with represented parties must immediately end upon learning that the party is represented by counsel. Respondent further lays blame on the concept of "unbundled" legal services rather than his own actions.

¶ 28. To respondent's credit, there was no evidence presented to the panel that respondent had a dishonest or selfish motive. This absence of motive weighs in respondent's favor. We also acknowledge that respondent did not contact husband again after the phone call. The misconduct in question is strictly limited to a portion of one conversation. Respondent's strongly worded email reply to husband's lawyer reflected his belief that the ethical rules would have permitted his continued contact with husband, but his actions demonstrated his compliance with husband's lawyer's directive.

¶ 29. Additionally, respondent was compliant with the proceedings and engaged in full and free disclosure during these proceedings. His initial answer to Disciplinary Counsel's misconduct petition acknowledges most of the facts as alleged, and he participated in and cooperated with the proceedings before the hearing panel. However, cooperation with an after-the-fact ethics proceeding does not outweigh the aggravating factors or otherwise change the presumptive sanction. See In re Bowen, 2021 VT 7, ¶ 45, 214 Vt. 154, 252 A.3d 300 ("[B]ecause attorneys have an independent professional duty to cooperate with disciplinary investigations under Rule 8.1(b), [the cooperation mitigation] factor is afforded little weight").

¶ 30. The foregoing considerations support respondent's suspension from the practice of law without deviating upwards to disbarment or downwards to a reprimand or admonition.

### 3. Length of Suspension

¶ 31. Where suspension is the appropriate sanction, the ABA Standards recommend it be for six or more months. ABA Standards § 2.3. But this recommendation is not binding on the hearing panel or this Court, which have both imposed shorter sanctions when appropriate. In re Kulig, 2022 VT 33, ¶ 50, __ Vt. __, 282 A.3d 926; see id. (deeming five-month suspension appropriate to adequately protect public without requiring application for readmission as necessary with six-month suspension); In re Adamski, 2020 VT 7, ¶ 1, 211 Vt. 423, 228 A.3d 72 (per curiam) (imposing fifteen-day suspension against attorney who intentionally concealed settlement check from firm's partners). As indicated above, we give consideration rather than deference to the hearing panel's sanction recommendation. Robinson, 2019 VT 8, ¶ 25. "In the past, we have looked to sanctions imposed in other cases to aid us in measuring out a sanction. However, we recognize that meaningful comparisons of attorney sanction cases are difficult as the behavior that leads to sanction varies so widely between cases." Id. ¶ 74 (quotations omitted) (citation omitted).

¶ 32. The panel noted four examples of disciplinary cases in which this Court suspended a lawyer for fewer than six months. See In re Doherty, 162 Vt. 631, 631, 650 A.2d 522, 522 (1994) (mem.) (approving two-month suspension for lawyer convicted of misdemeanor cultivation of marijuana in violation of ethics rule prohibiting "engaging in conduct adversely reflecting upon fitness to practice law"); In re Blais, 174 Vt. 628, 628-29, 817 A.2d 1266, 1267-68 (2002) (adopting hearing panel's imposition of five-month suspension and probation for lawyer who neglected client matters and committed three instances of misrepresentation in violation of ethics rules prohibiting "neglecting a matter entrusted to the lawyer" and "engaging in conduct involving dishonesty"); In re McCarty, 2013 VT 47, ¶ 1, 194 Vt. 109, 75 A.3d 589 (lowering six-month suspension to three months for lawyer who participated in wrongful eviction by engaging in fraudulent behavior in violation of six ethics rules); Adamski, 2020 VT 7, ¶ 1 (increasing sanction

from reprimand to fifteen-day suspension for lawyer who intentionally concealed settlement check from law firm in violation of ethics rule prohibiting dishonest and deceitful conduct).

¶ 33.    The panel then turned to consider a no-contact rule-violation case, In re Illuzzi, 160 Vt. 474, 632 A.2d 346 (1993) (per curiam), in which we suspended the respondent for six months for repeatedly communicating directly with represented parties in two separate cases.  In Illuzzi, the respondent "purposely bypassed opposing counsel" to contact insurance companies the respondent knew were represented in the matter.  Id. at 488, 632 A.2d at 353.  The respondent had also previously received a public reprimand and three private admonitions for a total of four prior sanctions.  Id. at 490-91, 632 A.2d at 355.

¶ 34.    The panel in the present case noted that respondent here and the respondent in Illuzzi both knowingly communicated directly with a represented party, though it acknowledged that husband here was not "a relatively sophisticated client" in contrast with the insurance company in Illuzzi.  The hearing panel also acknowledged that respondent here violated the no-contact rule once compared to Illuzzi's multiple violations, and that the prior disciplinary record in Illuzzi was significantly more extensive and involved a similar violation.  Upon drawing these distinctions, the panel determined that "while a suspension is appropriate, it should be of shorter duration."

¶ 35.    The panel concluded that a thirty-day suspension was necessary to "encourage respondent to take his ethical obligations more seriously" and appropriate in light of the potential injury and respondent's defiant email reply to husband's lawyer.  We see no reason to depart from the panel's decision.  Respondent's conduct, although certainly deserving of a suspension, was not so egregious as to warrant a longer one, especially in light of the mitigating factors and the absence of the more severe aggravating factors noted in Illuzzi.

## III. Conclusion

¶ 36.    Respondent violated Rule 4.2 by failing to immediately terminate the call upon learning that husband was represented and instead communicating to husband that his lawyer need not be present for a meeting to discuss the divorce matter.  Applying the ABA Standards, we agree with the panel that a thirty-day suspension is appropriate.

Respondent is suspended from the practice of law for thirty days; his suspension will begin when the mandate executes under V.R.A.P. 41.

FOR THE COURT:

_____

Associate Justice

14